[Cite as *State v. Schrack*, 2024-Ohio-2654.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. Andrew J. King, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| DONNA SCHRACK, | : | Case Nos. CT2023-0070 |
| | : | CT2023-0071 |
| Defendant - Appellant | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Muskingum County
                            Court of Common Pleas, Case Nos.
                            CR2022-0518, CR2023-0348

JUDGMENT:                    Affirmed in part; Reversed and
                            Remanded in part

DATE OF JUDGMENT:            July 12, 2024

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

JOSEPH A. PALMER                        APRIL CAMPBELL
Assistant Prosecutor                    Campbell Law, LLC
27 North Fifth St.                      545 Metro Place South, Suite 100
Zanesville, Ohio 43702                  Dublin, Ohio 43017

*Baldwin, J.*

## STATEMENT OF THE FACTS AND THE CASE

**{¶1}** The appellant was indicted on October 12, 2022, in Muskingum County Court of Common Pleas, Case No. CR2022-0518, on one count of illegal use of SNAP benefits in violation of R.C. 2913.46(B), a fifth degree felony; and, two counts of telecommunications fraud in violation of R.C. 2913.05(A), fifth degree felonies. The appellant pleaded not guilty at arraignment, but subsequently agreed to change her plea to guilty. During the December 12, 2022, change of plea hearing the trial court addressed the appellant directly, and had the following exchange:

THE COURT: You understand if you went to prison in this matter, it's optional, but upon your release the Adult Parole Authority could place you upon what is known as post-release control, and that could be for a period of up to two years?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You understand while on post-release control, you'd be subject to a variety of rules and regulations? Should you fail to follow those rules and regulations, you could be sent back to prison for a period of up to nine months for each rule violation you may commit. The total amount of time you could be sent back to prison would be equal to one-half your original prison sentence?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You also understand if you commit a new felony while on post-release control, in addition to any sentence you receive for that new

felony, additional time can be added to that sentence in the form of the time you have left on post-release control or one year, whichever's greater?

THE DEFENDANT: Yes, Your Honor.

The trial court accepted the appellant's guilty plea, ordered a pre-sentence investigation, and scheduled the matter for sentencing.

{¶2} The pre-sentence investigation was completed on January 12, 2023, and included a summary of the appellant's past criminal record, which contained both felonies and misdemeanors. The PSI reported that the appellant's felony record included forgery in 1988; aggravated trafficking in drugs, and theft with prior conviction charges in 1993; theft over $500 in 1999; and, trafficking in drugs within the vicinity of a juvenile in 2001.

{¶3} The appellant's misdemeanor record included three counts of disorderly conduct in 1986; failure to honor a subpoena, and obstruction of justice in 1988; disorderly conduct in 1992; petit theft in 1993; soliciting prostitution on 4/28/1993, and again on 5/21/1993; criminal trespassing in 1996; soliciting on 8/7/1996; soliciting on 8/25/1996; two separate charges of criminal trespassing in 1998; possession of drug paraphernalia in 1998; soliciting on 5/20/1998, and again on 10/29/1998; four counts of petit theft in 1999, one count of which, on 4/10/1999, also included soliciting; possession of marijuana in 2001; soliciting on 1/13/2001, and again on 8/31/2001; soliciting on 1/12/2004, and again on 5/27/2004; soliciting on 9/12/2005; soliciting on 9/18/2007; assault in 2008, as well as soliciting on 8/6/2008; loiter to solicit on 11/17/2009; soliciting on 12/5/2012; soliciting on 10/23/2013; theft and domestic violence in 2015; petty theft and theft (less than $1000) in 2016; and, complicity in 2019. Her past criminal record included, *inter alia*, sixteen (16) solicitation charges and one (1) loiter to solicit charge.

**{¶4}** On January 23, 2023, the trial court conducted a sentencing hearing in Case No. CR2022-0518, during which it had the following exchange with the appellant:

THE COURT:          Thank you. Well, the Court has received the presentence investigation and had an opportunity to review the same.

The Court will note for the record you entered a plea of guilty to three felonies of the fifth degree, and the case plan - - or the presentence investigation does indicate what was already mentioned.

You do have couple prior felonies, but they've been - - more than 22 years ago was the last time you had a felony. And you've had a number of misdemeanors going back into the '80s and working up through. I think it was 2016 or '17 was the last one I saw. So for a few years, though, you've been not coming into the courts.

But you're here today on $628 or something like that. So I'm going to place you upon community control for a period of one year with the primary condition that you pay your restitution.

THE DEFENDANT: Okay.

THE COURT:          Once you've completed that, the probation department will decide what else you need to do, but at this point in time that's all I'm' ordering you to do.

THE DEFENDANT: Okay.

THE COURT:          You're remanded into custody until such time as arrangements can be made to place you upon community control. Good luck to you.

{¶5} While the trial court advised the appellant at her change of plea hearing of the consequences that may transpire if she violated the conditions of her community control, it did not do so during her sentencing hearing.

{¶6} On June 1, 2023, the appellant was indicted in Muskingum County Court of Common Pleas, Case No. CR2023-0348, on two counts of burglary in violation of R.C. 2911.12(A)(2) and (D), second degree felonies; and two counts of misdemeanor theft in violation of R.C. 2913.02(A)(1) and (B)(2), first degree misdemeanors.

{¶7} On July 13, 2023, the appellee filed a motion in Case No. CR2022-0518 asking the trial court to schedule a hearing on the issue of whether the offenses for which the appellant was indicted in Case No. CR2023-0348 constituted a violation of her community control in connection with Case No. CR2022-0518, asserting that the appellant failed to comply with the conditions of community control.

{¶8} On July 24, 2023, the appellant entered into a plea agreement in Case No. CR2023-0348 in which she agreed to plead guilty to one count of burglary, and the appellee agreed to dismiss the remaining counts. In addition, a hearing was held on July 24, 2023, at which the appellant, *inter alia*, pleaded guilty to community control violations in Case No. CR2022-0518. The trial court determined, after consultation with counsel, that it would address sentencing on both the community control violation case (CR2022-0518) and the burglary case (CR2023-0348) during the hearing. After presenting the testimony of appellant's probation officer, the appellee addressed the trial court as follows:

> MR. LITLE: The Court is in possession of the presentence investigation here. Ms. Schrack has an eye-watering record of criminal

behavior which dates back, at the very least, to the first Reagan administration.

The - - if she was here - - you know, this is not her first felony of the second degree, so that's why we have mandatory prison time. She has a record of committing offenses both great and small, and of being a continuous, ongoing, and unapologetic nuisance. Now, being a nuisance is not a reason we send someone to prison, but it is explanation of some of the character reference - - or contents in terms of determining sentencing.

In terms of determining recidivism, her recidivism is a virtual guarantee. Like, this is just how she has behaved for the past four decades continuously. She is a known entity to not just law enforcement, but even to individuals who are just members of the community attempting to be productive.

I - - I mentioned the owner of the Sunshine Shoppe, where she is often down there prostituting and doing things and being a menace, who just is at the end of his rope with that frustration.

Here we have a burglary that has a part of its main components of betrayal. Right. It's not just that she burglarized someone, it's that she got them to do her the favor of allowing her into their house so that she could do a medial task to justify their charity towards her, and then she betrayed that trust and used it to commit burglary. That is - - there is a deep-seated character law related to that.

Similarly, she went down to Job & Family Services o her underlying case, where she applied and asked for help, and the she lied about all of that and - -

DEFENDANT:        No.

MR. LITLE:        -- was taking the money from the SNAP violations.

So, you know, the question is what's - - what's the right sentence here. Sometimes when someone gets up older in age it seems like, okay, maybe their criminal behavior is going to slow down or confine itself to something Just doesn't appear to be the case here.

So she has three years of exposure on the community control case, and she has eight years of exposure on the burglary case. I would suggest that a sentence of five to six years is appropriate for the cases in combination. And that will give her an opportunity to reflect on possibly changing the decisions that she makes and it will give the community an opportunity to have some breathing room from her behavior.

**{¶9}** With regard to the community control violation charges in Case No. CR2022-0518, the trial court sentenced the appellant to six months in prison on each count, to be served concurrently with one another for an aggregate prison sentence of six months, with credit for time served.

**{¶10}** With regard to the burglary charge in Case No. CR2023-0348, the trial court sentenced the appellant to a mandatory minimum prison term of four years, and an indefinite prison term of six years. The court stated further that "**Provided, however, the**

**term of incarceration imposed herein shall be served mandatory consecutive to the sentence imposed in the community control violation in … Case No. CR2022-0518.**" (Emphasis original.) The court further notified the appellant that she was subject to mandatory post-release control for "**eighteen (18) months up to three (3) years**." (Emphasis original.)

{¶11} The appellant filed a timely appeal in which she sets forth the following assignments of error:

{¶12} "I. FIRST ASSIGNMENT OF ERROR: SCHRACK'S RIGHT TO DUE PROCESS WAS DENIED BECAUSE OF THE PROSECUTOR'S MISCONDUCT IN PERSISTENTLY ATTACKING HER CHARACTER WHEN THE TRIAL COURT SENTENCED SCHRACK."

{¶13} "II. SECOND ASSIGNMENT OF ERROR: SCHRACK'S SENTENCE WAS CONTRARY TO LAW: THE TRIAL COURT COULD NOT IMPOSE A SANCTION ON SCHRACK FOR BEING INDICTED WITH A NEW FELONY OFFENSE WHILE ON COMMUNITY CONTROL, BECAUSE IT DID NOT NOTIFY HER AT HER SENTENCING HEARING THAT THIS WAS A POSSIBILITY."

{¶14} "III. THIRD ASSIGNMENT OF ERROR: SCHRACK'S SENTENCE WAS CONTRARY TO LAW: THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES ON SCHRACK BECAUSE AT THE TIME THE TRIAL COURT-IMPOSED COMMUNITY CONTROL, IT DID NOT NOTIFY HER THAT CONSECUTIVE SENTENCES ON REVOCATION WAS A POSSIBILITY. NOR DID IT ADVISE HER OF THE POTENTIAL LENGTH IN PRISON SHE COULD SERVE."

**{¶15}** "IV. FOURTH ASSIGNMENT OF ERROR: THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES ON SCHRACK BECAUSE THAT SENTENCE WAS CONTRARY TO LAW: MANDATORY CONSECUTIVE SENTENCES ARE NOT REQUIRED IN THIS CASE. AND BECAUSE THE TRIAL COURT DID NOT MAKE CONSECUTIVE SENTENCING FINDINGS, ANY PROPER SENTENCE MUST BE RUN CONCURRENTLY."

## ASSIGNMENT OF ERROR NUMBER ONE

**{¶16}** The appellant argues in her first assignment of error that the prosecutor engaged in prosecutorial misconduct, thereby denying her due process rights. We disagree.

## STANDARD OF REVIEW

**{¶17}** The appellant failed to object to the prosecutor's allegedly prejudicial comments during the July 24, 2023 sentencing hearing that she now claims were improper.

In cases where a defendant "fails to object to the prosecutor's alleged misconduct, he waives all but plain error." *Wellston v. Horsley*, 4th Dist. No. 05CA18, 2006-Ohio-4386, 2006 WL 2457392, ¶ 22, citing Crim.R. 52; *State v. Hartman*, 93 Ohio St.3d 274, 294, 754 N.E.2d 1150 (2001). Notice of plain error, pursuant to Crim.R. 52(B), "is to be taken with the utmost of caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* Further, "[p]lain error should not be invoked unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise." *Id.*

*State v. Fudge,* 2018-Ohio-601, ¶49 (10th Dist.). Thus, the appellant has waived all but plain error.

**{¶18}** The Ohio Supreme Court recently discussed the doctrine of plain error in *State v. Bailey,* 2022-Ohio-4407:

> Under the plain-error doctrine, intervention by a reviewing court is warranted only under exceptional circumstances to prevent injustice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus ("Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice"). To prevail under the plain-error doctrine, Bailey must establish that "an error occurred, that the error was obvious, and that there is 'a reasonable *probability* that the error resulted in prejudice,' meaning that the error affected the outcome of the trial." (Emphasis added in *Rogers.*) *State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459, ¶ 66, quoting *Rogers* at ¶ 22; *see also State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 52.
>
> The elements of the plain-error doctrine are conjunctive: all three must apply to justify an appellate court's intervention. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002) ("By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial").

*Id.* at ¶8-9. Thus, the appellant must establish that (1) an error occurred; (2) that the error was obvious; and, (3) that there is 'a reasonable *probability* that the error resulted in prejudice.

{¶19} The issue of prosecutorial misconduct was recently discussed by this Court in *State v. Lee*, 2024-Ohio-2044 (5th Dist.):

> The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. *Sunbury v. Sullivan*, 5th Dist. Delaware No. 11CAC030025, 2012-Ohio-3699, ¶ 30, citing *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).

> In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained-of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). A trial is not unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt the jury would have found the defendant guilty even without the improper comments. *State v. Treesh*, 90 Ohio St.3d 460, 464, 2001-Ohio-4, 739 N.E.2d 749.

> Allegations of prosecutorial misconduct implicate due process concerns, and the touchstone of the analysis is the " 'fairness of the trial, not the culpability of the prosecutor.' " *State v. Newton*, 108 Ohio St.3d 13, 2006-Ohio-81, 840 N.E.2d 593, ¶ 92, *quoting Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

If any misconduct occurred, the court must consider the effect it had on the jury "in the context of the entire trial." *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993). With regard to each allegation of misconduct, we must determine whether the conduct was "improper, and, if so, whether [it] prejudicially affected substantial rights of the defendant." *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "[A] defendant's substantial rights cannot be prejudiced when the remaining evidence, standing alone, is so overwhelming that it constitutes defendant's guilt, and the outcome of the case would have been the same regardless of evidence admitted erroneously." *State v. Hicks*, 194 Ohio App.3d 743, 2011-Ohio-3578, 957 N.E.2d 866, ¶ 30 (8th Dist. 2011), *citing State v. Williams*, 38 Ohio St.3d 346, 349–350, 528 N.E.2d 910 (1988).

Whether statements made by a prosecutor amount to misconduct and whether such statements render a trial fundamentally unfair are mixed questions of law and fact, which we review *de novo. State v. Razey*, 5th Dist. Delaware No. 23CAC030021, 2023-Ohio-4190, ¶ 28, citing *United States v. Carson*, 560 F.3d 566, 574 (6th Cir. 2009).

*Id.* at ¶¶46-50.

**ANALYSIS**

**{¶20}** The appellant argues that the prosecutor's statements during the sentencing hearing regarding her criminal history, specifically his reference to her "prostituting," "being a menace," and "having a deep-seated character flaw," constituted "a persistent attack on her character that was so improper as to deny her due process."

{¶21} We find, after reviewing the record, that the prosecutor, while colloquial in his presentation, accurately summarized the appellant's criminal history, which included no fewer than sixteen incidents of prostitution. While the appellant implies that the prosecutor repeatedly referred her as a prostitute, he in fact only mentioned that part of her history on one occasion in the context of summarizing her criminal history as set forth in the PSI in connection with sentencing.  The remark was not improper. Furthermore, assuming *arguendo* that it was improper, there is no evidence that the trial court was influenced by said comments when it imposed sentence.

{¶22}  The case sub judice does not present sufficiently exceptional circumstances that would warrant application of the plain error doctrine. The prosecutor's comments were not improper and, further, did not prejudicially affect the appellant's substantial rights. Accordingly, the appellant's first assignment of error is without merit, and is overruled.

### ASSIGNMENT OF ERROR NUMBERS TWO, THREE AND FOUR

{¶23}  The appellant's second, third, and fourth assignments of error all deal with the trial court's imposition of a six-month sentence for her failure to comply with the conditions of her community control for the illegal use of SNAP benefits and telecommunications fraud charges in Case No. CR2022-0518, and will therefore be considered together.

{¶24} R.C. 2929.19(B)(4) addresses the imposition of community control sanctions, and provides:

> If the sentencing court determines at the sentencing hearing that a community control sanction should be imposed and the court is not

prohibited from imposing a community control sanction, the court shall impose a community control sanction. The court shall notify the offender that, if the conditions of the sanction are violated, if the offender commits a violation of any law, or if the offender leaves this state without the permission of the court or the offender's probation officer, the court may impose a longer time under the same sanction, may impose a more restrictive sanction, or may impose a prison term on the offender and shall indicate the range from which the prison term may be imposed as a sanction for the violation, which shall be the range of prison terms for the offense that is specified pursuant to section 2929.14 of the Revised Code and as described in section 2929.15 of the Revised Code.

{¶25} The Ohio Supreme Court discussed the issue further in *State v. Brooks,* 2004-Ohio-4746, holding that "a trial court sentencing an offender must, *at the time of sentencing*, notify the offender of the specific prison term that may be imposed for a violation of the conditions of the sanction, as a prerequisite to imposing a prison term on the offender for a subsequent violation." (Emphasis added.)  *Id.* at ¶29. See, also, *State v. Delcol,* 2009-Ohio-3870, ¶53 (5th Dist.).

{¶26} The remedy for a trial court's failure to advise a defendant at the sentencing hearing of the consequences of violating the terms of community control was discussed in *Brooks,* which stated:

When a trial court makes an error in sentencing a defendant, the usual procedure is for an appellate court to remand to the trial court for resentencing. See R.C. 2953.08(G); *Comer,* 99 Ohio St.3d 463, 2003-Ohio-

4165, 793 N.E.2d 473, at ¶ 10, 23, 27. In community control sentencing cases in which the trial court failed to comply with R.C. 2929.19(B)(5), however, a straight remand can cause problems. Due to the particular nature of community control, any error in notification cannot be rectified by "renotifying" the offender. When an offender violates community control conditions and that offender was not properly notified of the specific term that would be imposed, an after-the-fact reimposition of community control would totally frustrate the purpose behind R.C. 2929.19(B)(5) notification, which is to make the offender aware *before a violation* of the specific prison term that he or she will face for a violation. Consequently, where no such notification was supplied, and the offender then appeals after a prison term is imposed under R.C. 2929.15(B), the matter must be remanded to the trial court for a resentencing under that provision with a prison term not an option.[2] In this case, since the prison term has already been served, there will be no remand for resentencing.

*Id.* at ¶33. The Court noted further at footnote 2:

When a trial court sentences an offender who has violated conditions of community control and the defendant did not receive notice of the specific term under R.C. 2929.19(B)(5) so that a prison term is not an option, the trial court at the R.C. 2929.15 sentencing must choose one of the other options under R.C. 2929.15(B) (imposing a longer time under the same sanction or imposing a more restrictive sanction). We do not reach the issue of whether a trial judge who, in that situation, at the time of the R.C.

2929.15(B) sentencing, informs the offender of the specific term he or she faces for a violation of the conditions of community control may subsequently impose a prison term if the offender violates conditions of community control a second time.

**{¶27}** In this case, while the trial court discussed with the appellant the ramifications of violating conditions of community control at her change of plea hearing and in the judgment entry in Case No. CR2022-0518, it did not do so at the sentencing hearing. The appellant's second, third, and fourth assignments of error are, therefore, sustained.

## CONCLUSION

**{¶28}** Based upon the foregoing, the appellant's first assignment of error is overruled. The appellant's second, third, and fourth assignments of error are sustained, and the issue of sentencing for violation of community control conditions in Case No. CR22-0518 is reversed and remanded for further proceedings consistent with this opinion.

By: Baldwin, J.

King, P.J. and

Wise, John, J. concur.